## Case No. 14,853.

UNITED STATES v. COOK COUNTY NAT. BANK et al.

[9 Biss. 55; 8 Reporter, 198; 25 Int. Rev. Rec. 266; 2 Nat. Bank. Cas. (Browne,) 128; 11 Chi. Leg. News, 344.] [1]

Circuit Court, N. D. Illinois. June, 1879.[2]

NATIONAL BANKS — INSOLVENCY — PRIORITY OF CLAIMS OF UNITED STATES—NATIONAL BANKING ACT—REPEAL BY IMPLICATION.

1. The United States has a prior lien over other creditors, in the distribution of the assets of an insolvent national bank in charge of a receiver, for the payment of all claims which the government has against such bank.

2. It was not intended that the provisions of the national banking act of 1864 [13 Stat. 99] should, as to banks organized under it, operate as a repeal or modification of the statutes which give the government a priority in the distribution of the estates of its debtors.

3. In the absence of express words of repeal, it is the duty of the court to give effect to the prior statute if it be possible to do so. Unless the repugnancy between the subsequent and prior statutes is so absolute and palpable as to be recognized at once without the aid of argument, it should be assumed that the legislative department intended both statutes to stand.

4. The government has a priority to secure the payment of postal and money order funds on deposit in a national bank when such bank becomes insolvent.

Demurrer to bill to establish priority.

The facts in this case as set up by the bill were, that the defendant bank was duly organized under the national banking laws, and was also designated as a depositary of money and funds of the United States. It became insolvent and suspended, with liabilities largely exceeding its assets. A receiver [Augustus H. Burley] was appointed and entered upon the discharge of his duties. At the time of its suspension the bank had on deposit a large amount of postal and money order funds, which were designated on the books of the bank as "Postal Funds" and "Money Order Funds" of the United States. These deposits had been made by John McArthur, postmaster at Chicago, under directions from the postmaster general. When the bank suspended, the treasury department held United States bonds to the amount of $100,000, deposited by the bank as security for its circulation. The bank having failed to pay its circulation, these bonds, in pursuance of the statute, were declared forfeited to the United States. A portion of them had, when the bill was filed, been sold, and it was the intention of the department to sell the remainder for the purpose of redeeming the circulating notes, and reimbursing the government for advances made on that account, which would leave a balance exceeding $30,000, or a sum sufficient to pay the debts due the United States on account of postal and

---

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission. 8 Reporter, 198, contains only a partial report.]

2 [Reversed in 107 U. S. 445, 2 Sup. Ct. 561.]

money order funds deposited, as aforesaid, in the bank, by McArthur. In addition, the treasury department held a sum exceeding $30,000, belonging to the bank and which had been collected upon bills receivable and debts due the bank, in the course of settling up its affairs. A question arose whether the claims of the United States for moneys deposited by Postmaster McArthur were a preferred debt; that is, whether the United States should not distribute the funds and assets in its hands, equally among all the creditors of the bank, including the United States. Thereupon, this bill was filed for the purpose of having an account taken of the amount due the government, and for a decree directing the disposition of the funds belonging to the bank, in the control of the treasury department. On behalf of the bank and its receiver the contention was, that after reimbursing the United States for all sums advanced in redeeming the bank's notes, in excess of the proceeds arising from the sale of United States bonds deposited with the department as security for its circulation, the entire assets of the bank should be distributed pro rata, or equally, among all the creditors of the bank, including the United States.

W. C. Goudy and Mark Bangs, for the United States.

Monroe, Bisbee & Ball, for defendants.

Before HARLAN, Circuit Justice; DRUMMOND, Circuit Judge; and BLODGETT, District Judge.

HARLAN, Circuit Justice (orally). Very early in the history of the government it was provided by statute, that debts due the United States, should be first satisfied in all cases where any revenue officer, or other person, thereafter becoming indebted to the government, by bond or otherwise, should become insolvent, or where the estate of any deceased person, in the hands of executors or administrators, should be insufficient to pay all the debts due from the deceased. The priority thus established was declared to extend not only to cases in which an act of legal bankruptcy should be committed, but to those in which a debtor, not having sufficient property to pay all his debts, should make a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor, should be attached by process of law. Act March 3, 1797 (1 Stat. 515). That was an act providing more effectually for the settlement of accounts between the United States and receivers of public money, but it was held to include all debtors to the United States, whatever their character and in whatever mode bound. U. S. v. Fisher, 2 Cranch [6 U. S.] 358; Beaston v. Farmers' Bank of Delaware, 12 Pet. [37 U. S.] 102. In the act of March 2, 1799, regulating the collection of duties on imports, a like priority was given to the government as to claims upon bonds given for the payment of duties. 1 Stat. 676;

Act 1790 (1 Stat. 169). The policy inaugurated by these statutes seems to have been steadily maintained by the government. Their substantial provisions have been preserved in the authorized revision of the statutes. Rev. St. § 3466 et seq.

It is insisted, however, by the defendants, that a different rule must be observed in the distribution of the assets of an insolvent national bank, in charge of a receiver appointed by the comptroller of the currency. They assume that the national banking act of 1864, the provisions of which are preserved in the Revised Statutes, placed all the creditors of a suspended national bank upon an equal footing, except that for any deficiency, in the proceeds of the sale of United States bonds pledged to secure the circulation of such bank, but for no other purpose, the government is given "a first and paramount lien upon all the assets of such association," and to that extent and no farther, is it entitled, in the distribution of assets, to priority above all other creditors. 13 Stat. 114.

This position, it is earnestly claimed, is sustained by section 50 of the act of 1864 (Rev. St. § 5236), which, among other things, provides: "From time to time, after full provision has been first made for refunding to the United States any deficiency in redeeming the notes of such association, the comptroller shall make a ratable dividend of the money so paid over to him by such receiver on all such claims as may have been proved to his satisfaction, or adjudicated in a court of competent jurisdiction; and as the proceeds of the assets of such association are paid over to him, he shall make further dividends, on all claims previously proved or adjudicated; and the remainder of the proceeds, if any, shall be paid over to the shareholders of such association, or their legal representatives, in proportion to the stock by them respectively held."

The specific contention is, that these provisions of the national banking act operate as a repeal or modification, pro tanto, of the statutes which give the government a priority in the distribution of the estates of those indebted to it.

We cannot yield our assent to any such construction of the statutes in question. The authorities cited by learned counsel do not justify the conclusion for which they contend. They only announce the general rule, recognized in all the books, "that a subsequent statute which is clearly repugnant to a prior one, necessarily repeals the former, although it does not do so in terms; and, even if a subsequent statute be not repugnant in all its provisions, to a prior one, yet, if the latter statute was clearly intended to prescribe the only rule that should govern in the case provided for, it repeals the former act. 'Leges posteriores, priores contrarias abrogant.'" Davies v. Fairburn, 3 How. [44 U. S.] 636; Wood v. U. S., 16 Pet. [41 U. S.] 362; Sedg. St. Law, 124, 125.

But it is equally well settled that repeals, by implication, are not favored by the courts. It must be presumed that the subsequent statute was passed with accurate knowledge upon the part of cong_ess of the language and scope of previous legislation upon the same subject. If there was an intention to repeal or modify the prior statute, the further presumption must be indulged, that direct terms, for that purpose, would have been employed. In the absence of express words of repeal, it is the duty of the court to give effect to the prior statute, if it be possible to do so. Unless the repugnancy between the subsequent and prior statutes is so absolute and palpable as to be recognized at once, without the aid of ingenious argument, it should be assumed that the legislative department intended both statutes to stand. McCool v. Smith, 1 Black. [66 U. S.] 471; Sedg. St. Law, 127. In view of these established rules of statutory construction, we are unable to concur in the suggestion that the national banking acts were intended to affect the priority given by previous statutes to the United States in the distribution of the estates of insolvent or deceased persons, or of corporations. indebted to the government. We include corporations because it is the settled construction of the original act of 1797, that corporations are included in the general designation of "persons" in that statute. U. S. v. State Bank, 6 Pet. [31 U. S.] 29. It is admitted by learned counsel that before the passage of the act of 1864, the government had a priority in all the cases specified in the acts of 1797 and 1799, whether the debtors were individuals or corporations. It is also admitted that such priority now exists, except in the cases of national banks for whom receivers have been appointed. But no sound reason has been assigned for a distinction in behalf of the general creditors of national banks. which, counsel concede, is not allowed in behalf of the creditors of other corporations, by whatever authority created, which are indebted to the United States. The words of the statute are broad, that "whenever any person indebted to the United States is insolvent * * * the debts due to the United States shall be first satisfied." The defendant bank is, therefore, embraced by the express language of the statute. The same considerations of public policy which suggested the act of 1797, exist as well now as when the act of 1864 was passed; and there is no such irreconcilable inconsistency. between the two acts, or between the several provisions of the Revised Statutes upon the same subject. as requires us to assume that congress intended, by the last statute to surrender the government's priority in any case covered by the prior statute. The two acts may well exist together. The direction in the national banking act, as to a ratable dividend - upon all claims against the bank, satisfactorily proven, or adjudicated in a court of competent jurisdiction, should be construed as applicable to all cases of suspended national banks in the hands of receivers, except, and except only, where the United States is a creditor of the bank, and, in such cases, the rule of priority declared in express words, and never directly, or by necessary implication, abrogated by congress, should be enforced. They, the prior and subsequent statutes. may thus be reconciled. We are unwilling. by mere judicial construction, to upset a long established policy of the government in reference to its claims against insolvent debtors, whether individuals or corporations.

Our attention has been called to the case of the National Bank v. Colby, 21 Wall. [88 U. S.] 613, where the supreme court of the United States. referring to the act of 1864, said: "As to the general creditors, the act evidently intends to secure equality among them in the division of the proceeds of the property of the bank." That case, it is clear, does not touch the precise point under considera:ion. It did not involve any question of priority as between the United States and the general creditors of the bank. The contest in that case was between the receiver, representing the general creditors, and a particular creditor, who had sought through adverse proceedings by attachment in a state court, to obtain a preference or advantage over other creditors. It was in reference to such a contest that the language cited was used.

The court is of opinion that the grounds assigned in support of the demurrer are not well taken—that the application by the United States of the balance on its hands, arising from the sale of bonds held as security for all public moneys deposited in the defendant bank, to the payment, pro tanto, of its claims for postal funds and money order funds, was in accordance with law, and that it may retain. out of any money under its control, belonging to the bank, a sum sufficient to discharge any lawful debt or claim it has against such bank, however it may have originated.

The demurrer is overruled, and unless the defendants present an answer, controverting the allegations of the bill. complainant's counsel may prepare such order as may be consistent with this opinion.

[NOTE. The defendants elected to stand by their demurrer, and from the final decree entered in accordance with the opinion above they took an appeal to the supreme court. The decree was reversed, and the cause remanded, with directions to sustain the demurrer and to dismiss the bill. 107 U. S. 445, 2 Sup. Ct. 561.]